THE plaintiffs, in their bill stated that an intimacy and friendship having been between John Robinson and Beverly Whiting, the former, not only advanced to the latter monies at different times, but, being treasurer of Virginia,.did, at his request, allow to sheriffs and inspectors money due to them from Beverley Whiting, charging them to him in account, and giving him sundry credits, a copy of this account, number 1, supported by vouchers, is annexed to the bill, whereby a balance, including interest, of 4181.16s. lOd. appeared to be due to John Robinson from Beverly Whiting, when the latter died, in 1755, Beverley Whiting appointed his brothers Thomas Whiting and Francis Whiting, with John Robinson, executors of his testa *39 ment, and appointed John Robinson Guardian to his sons, which trust the testator hoped he would vouchsafe to take upon him, as a testimonial of the last favour he could bestow upon the testator, the bill stated that Robinson was induced to accept the trust of executor and guardian, by the promise of Thomas Whiting, (for Ifrancis Whiting would not intermeddle in the matter,) that he would manage the plantations and other affairs of the estate, and attend to the education of the children, and recur to John Robinson for advice when it should be necessary. of this promise no proof is exhibited. The bill stated that John Robinson did not concern himself in the affairs of Beverley Whiting, otherwise than in settling with sheriffs, and other public collectors for levies due from the estate, and in paying some debts, all which advances are entered in the account, number 2, annexed in the bill for which vouchers are also exhibited. The plaintiffs however admit, from information, that John Robinson had drawn orders on an overseer, at one of Beverley Whitings plantations, for corn, for the amount whereof, when it could be ascertained, the plaintiffs were willing to give credit, the bill stated that Thomas Whiting shipped the crops of his brothers estate, and imported goods for his family, and therefore accounts of the disposition of those crops could not reasonably be required from the plaintiffs, whose testator transacted no business relative to the estate otherwise than as before mentioned.
The bill further stated that Peter Beverley Whiting and John Whiting, who were sons of Beverley Whiting, and to whom he had devised his estate, after, by the profits of it, kept together, his debts should be discharged, having attained their.full ages, and somehow got possession of their respective estates, John Robinson was desirous of having the accounts of the administration settled, that he might receive the considerable balance due to him, and procured several times and places to be appointed for meeting with Thomas Whiting and the sons for that purpose, but they did not meet, and he died in may, 1766.
The bill further stated, that the plaintiffs, to whom with another since dead, the administration of John Robinson’s estate with his testament annexed was committed, employed George Brooke to adjust the accounts of the estate and collect the money due to it, delivering into his hands the books and papers for that purpose, until his death, in the year 178 , during which time, from the confidence reposed in that agent, the plaintiffs doubted not that he had collected the debt, or secured it by bond or a judgment, they had not discovered that a settlement had been made or a speciality taken, however they believed *40 and hoped to prove, that George Brooke furnished copies of the accounts, numbers 1, and 2, to Peter Beverley Whiting, (John being dead insolvent,) and shewed him the vouchers for the same, which were found carefully wrapped up with the accounts, and that Peter Beverly Whiting had no objection to that account, but did not pay or give a specialty for it, until he should hare a general account of the administration of his fathers estate settled, which he knew was only to be expected from his uncle Thomas Whiting, but which he hoped might be forwarded by the assistance of George Brooke, if payment to the plaintiffs were delayed, in part proof of these suggestions, the plaintiffs stated, that one John Hobday, who had been an overseer for Beverley Whiting, and after liis death in his estate, had a demand, on that,account, of 351. 16s. 6d. besides interest from june 1758, and, being indebted to the estate of John Robinson, insisted that George Brooke should allow his demand,for which he alleged John Robinson to have been liable, out of his debt; and thereupon Peter Beverley Whiting, that he might induce George Brooke to give the proposed credit, signed the noté following: the money that is due from my fathers estate, to mr. John Hobday i will fay, whenever myfathers estate is settled, with the speakers. Peter Beverley Whiting, june the 10,1767- from whence theplaintiffs inferred that Peter Beverley Whiting knew an account to be then subsisting between his father and John Robinson, and that he meaned to have a fair settlement thereof at a future day ; and that he also knew he should be indebted on that account would appear, as the plaintiff’s alleged, from an order drawn by him on Leroy Hipkins, dated the 7 day of no-vember, 1771, in these words: sir, please to pay to the administrators of John Bobinson esquire 35 l. 16s. 6d. and you’ll oblige, sir, your humble servant, Peter Beverley Whiting.
The plaintiff’s further stated, from information, that George Brooke, Peter Beverley Whiting, and Thomas Whiting had obtained an order of Gloucester county court, appointing commissioners to examine and settle the respective accounts of John Robinson and Thomas Whiting with the estate of Beverley "Whiting, but the order was not performed through the failure of Thomas Whiting to attend the commissioners at their meetings, until the late war, which interrupted business of this kind.
The plaintiff’s farther stated, that, in eonsequence of an inquiry made by their agent, after the death of George Brooke, into the state of this business, the plaintiff Edmund Pendleton received from the defendant Elizabeth Whiting a letter, dated 16 day of august, 1783, of which a part quoted in the bill is in the words following : i have informed colo Whitings executors, that i intend, next court, to petition for a settlement of the estate, *41 which they say they are willing to have done ; and i doubt not you are equally so. you wiU probably wonder why you were not applied to ere now. the reason, sir, toas, that the speaker ivas said to die insolvent, the report of this account ivill only bring on a settlement a few months sooner than was intended ; for i ivas always determined to pursue the measures our friend would have taken, had it not pleased the almighty to take him from us.
In answer to this letter, the plaintiff Edmund Pendleton wrote a letter to tiré defendant Elizabeth Whiting, pointing out the mode in which the accounts between the parties might be conveniently adjusted ; he afterwards wrote another letter to her, desiring to know what she had done, or meant to do, in the business.
Put the plaintiffs stated thatthe defendent Elizabeth Whitng, combining with the other defendents, who are the executors of Thomas Whiting, refused to proceed in the settlement of accounts between the parties, although, at her instance, in January, 1784, an order was made by Gloucester county court, appointing commissioners for that purpose, saying that as she was advised, the demand of the plaintiffs was barred by the statute for limitation of actions, whereas the plaintiffs charged, that, John Robinson and Thomas Whiting acting as trustees, no length of time would bar their being accountable to the children for the trust, and, equality being the equity of this court, the remedy in such case ought to be mutual, and that in this light Peter Beverley Whiting understood it,was said to be plane, who from the letter and notes before Mentioned, as well as the orders of court for settlement of the accounts, never meaned to avale himself of the length of time, but to have a fair and just settlement, and to pay or receive the balance as it should happen to be due ; on which notes and orders, as well as the letter of, and order obtained by, the defendant Elizabeth Whiting, the plaintiffs relied, to obviate the act for limitation of actions, if it should be insisted on.
And the plaintiffs, alledging themselves tobe relievable in a court of equity only, because their testator was one of the executors of Beverley Whiting, from whom and whose estate the debt was due, and that estate must be there persued for-satis-faetion, prayed that the defendants might be decreed to account, and to pay to the plaintiffs so much money as ought to he charged on Peter Beverley Whitings proportion of his fathers estate, the plaintiffs submitting to lose so much as ought to he charged on the estate of John W'hiting, the insolvent son.
The defendant Elizabeth Whiting pleaded the statute for limitation of actions. She likewise put in an answer, to state the substance whereof here will appear to he unnecessary. *42 The other defendants also put in an answer, containing nothing important, and relied upon the statute i'or limitation of actions.
The plaintiffs replied to the plea of the defendant Elizabeth Whiting, as followeth, that for so much of their said demand as accrued during the life time of the said Beverley Whiting, in as much as the said John Robinson was executor of the will of the said Beverley', and all suits for the recovery' of the said demand thereby suspended, the act of limitations is not plead-able, in bar of the said demand, by the rules of law or equity ; and although the said John Robinson might have retained satisfaction for his said demand, yet the said plaintiffs do aver, and will maintain aud prove, that he was prevented from so doing by the two sons Peter Beverley Whiting and John Whiting having respectively taken possession of their estates (consisting of lands, slaves, and stocks, not in the daily view ..of the said John Robinson,) without his privity or consent, thereby subjecting themselves to the payment of the said demand, which they frequently promised to pay, and thereby gained the forbearance of the said John Robinson, and the said complainants further insist, that as it appears, of the dependents own shewing, and by the records of the county court of Gloucester, that the said Peter Beverley Whiting in his life time, and the dependent since his death, have severally applied for and obtained, from the said county court, orders that the executors of the will of the said Beverley Whiting should make up an account of their administration, the said defendent can not now, by the rules of equity, be allowed to plead the act of limitation in bar of such account, nor avoid payment of any balance which, upon such account, may appear to be due to the testator of the complainants, which is the end and scope of their bill.
On the second day of march, 1791, the court delivered the following
OPINION,
That the demand of the plaintiffs is, in its nature, prescripti-ble ; for the doctrine stated in the bill, that as a trustee, that is, one to whom the management of an affair is confided for the benefit of another, is not discharged, by length of time, from the obligation of accounting for his transactions and administration in and about the subject committed to him, so a like privilege ought to,attend a remedy of the former requiring an account from the latter, is supposed to be fallacious, because the posses *43 sion of what the one reeeiveth is fiduciary,—is the possession of him, for whom he acteth, and whom he represented, in that instance, and therefore never begineth to work a prescription : but the same cannot be praedicated of the others possession, which is, on the contrary, for himself, and adversary to all others : thus, although an executor cannot by length of time bar the right of the legatary, yet possession delivered to the legatary, or suffered to be taken and kept by him, without caution to return the thing bequeathed, in the event of future recoveries of debts may, as is apprehended, in process of time, extinguish the right as well of the executor, as of any other man, who neglecting to vindicate the right, within the period limited by law for asserting it, is presumed to have either abandoned it, or received satisfaction for it; thelatterof which presumptionsis the stronger in this case of an executor and guardian, who, having power to retain and appropriate so much of his constituents estate, or the profits of it, as was equal to his demand, did actually convert to his own use a part thereof, without giving credit for it, and, for anything shewn to the contrary, may have applied more of it in the same manner,—who left no account of a bill (a) for two hundred pounds sterling paid to John Robinson, supposed to he the testator of the plaintiffs, by John Hanbury and company of London, with which the executors of Beverley Whiting were charged ;—and who doth not appear, and is not pretended, to have rendered, or even kept, any account whatever of his executorship, or guardianship, the account number 2, to which the bill referreth, seeming, according to the state of it there, to have been formed from papers found by rummaging in a great mass since his death ; for the promise of Thomas Whiting, by which the said John Robinson is alleged in the hill to have been induced to accept the trust, if the promise had been proved, could not have dispensed with his obligations to fulfil the trust, after he had accepted it; nor do his attention to the duties of his public office or his services in the execution of it appear, by any thing disclosed in this case, to have been the one so sedulous that he could never advert to the duties of this private office, or the other so beneficial to the community that their merit can atone for the neglect of a trust accepted as. the last favor he could bestow on a dying friend.
Neither doth the court admit the proposition assumed in the replication, that the said John Robinson being an executor, as Well as a creditor of Beverley Whiting, all suits for the recovery of the plaintiffs demand were thereby suspended, to be*true nor if it were true, to be effectual to prevent the operation of *44 the statute for limitation of actions; for an executor who bad not assented to a legacy, which the plaintiffs deny the said John Robinson to have done,may maintain an action in a court of common law, even against the legatary, for recovering the thing bequeathed, and then may retain for his debt, or may prosecute a suit in the court of equity to recover his debt in the first instance; but, if the said John Robinson could not have maintained a suit, as executor, he might have maintained a suit, to recover possession of the estate as (b) guardian in either court.
And if the executorship obstructed the prosecution of suits by him, the obstruction, ceasing with his death, did not impede the operation of the statute afterwards.
Nor is the fact avered in the replication, that the said John Robinson was prevented from retaining satisfaction for his demand by the two sons Peter Beverly Whiting and John Whiting having taken possession of their estates, without hisprivity or consent, thereby subjecting themselves to the payment of the said demand, which they frequently promised to pay, verified by the testimony, or presumable after so many years, as to Peter Beverly Whiting, to charge whose estate is one principal object of this suit, the demand as to his brother being waved.
The court is also of opinion that neither the note signed by Peter Beverly Whiting, the 10 day of June, 1767, nor the order drawn by him, the 7 day of november, 1771, on Leroy Hip-kins, nor the letter dated the 16 day of August, 1733, from the defendant Elizabeth Whiting to the plaintiff Edmund Pendle-ton, nor the order of Gloucester county court, made on the motion of the defeudent Elizabeth Whiting, the first day of January, 1784, upon which the plaintiffs rely to obviate the statute for limitation of actions, ought to have that effect.
Not the first, because, if a consent or an obligation to account he contained in the terms of that note, the right of action originating thereby would have been barred by the time elapsed between the date of it, and the day when this suit was commenced, nor doth Peter BeveHey Whiting appear, of' the defendents own shewing, as the replication stateth, or otherwise, to have applied for, and obtained from the county court of Gloucester, an order or orders, that the said executors of the said Beverly Whiting should make up an account of their administration, the defendent, by her answer, having confessed that she remembered to have only heard of orders, from the motion of Peter Beverley Whiting, to have his fathers estate settled, nor is any such,order now among the exhibits.
*45 Not the second, because, if that could be so interpreted, as to contain a consent or-obiigation to account, it is also superannuated.
Not the third, because in one paragraph of that letter the writer of it declareth her opinion to be, that the length of time is sufficient to set aside all clames of the sort of that made by the plaintiffs, and, this being connected with the paragraph quoted in the bill, upon which the plaintiffs rely to prove her submission to a settlement of the executors account of administration of Beverley Whitings estate, if a commentary be made on both of them together, the fairer interpretation is, that she did not, by the latter, relinquish the defense, which in the former she thought a good defense, and that in favor to executors, of whose negligence, infidelity, and delinquency, the letter is replete with accusation; and if the defense and settlement be incompatible, she ought to be allowed her’election to abide by the former, which she declared, as is confessed, before the commencement of the suit, and determined by her plea afterwards, because no part of the letter diseovereth, although she bad been informed indeed of some account against the estate of Beverley Whiting, that she knew the nature or amount of the plaintiffs demand, or suspected that her husband was indebted to them, the contrary of which last may be inferred, as well from her forwardness to bring on a settlement, which, if the demand be established, would terminate in aggravated distress to herself and her family, as from that member of the paragraph quoted in the bill, wherein the speakers (Robinsons) insolvency is mentioned, as the cause of delaying an application to him to whom the letter was addressed, his solvency or insolvency being unimportant to her, otherwise than as some part of that reparation, for the losses her husband had sustained through the misconduct of his fathers executors, which was desperate in the latter event, she hoped might be obtained in the other : and if thus uninformed, and ignorant, and unapprized of the extent of the proposed settlement, she had explicitly and unconditionally promised to enter into it, the spirit of equity dictates rather absolution from such a promise than exaction of its performance. and because the writer of the Jptter had no power thereby to bind the estate of her husband for payment of that with which if he had been then living, he would not, by any thing now appearing, have been made chargeable; for that an executor or administrator, by his contract, should create an obligation in the testator or intestate, who had not delegated a special authority for that purpose, seems preposterous, and
Not the fourth, as well for the reason last assigned in the next preceding section, as because the plaintiffs were not a *46 party to the order, and were purposely omitted by the defen-dent Elizabeth Whiting, saying, as they confess in the bill, she was advised their demand was barred by the act of limitations ; so that the plaintiffs relying upon this order, taken with that saying, to obviate the act of limitation, seem to rely upon this, that when she reserved the power to plead the act, she relinquished the power to plead the act.
And, upon the whole matter, the court reviewing and frequently pondering the subjects of the foregoing disquisition, and observing that this bill requireth an account relating to the administration of an estate from one who was never bound, nor doth represent any who were bound, originally, if at all, to render it, and that this requisition is made by representatives of an executor and guardian, who was bound to render accounts of his administration and management of the same estate in both those characters, but confessedly never did render, and doth not appear to have even kept, an account of them in either, and by whose defaults in those instances, and possibly in other instances, no settlement of those accounts, free from injustice to one or other of the parties, can be made now, when those who transacted the matter proposed to be examined are dead ; when the evidence, by which some debits, now seeming indisputable, might have been controverted, and credits omitted might have been justified, in an earlier discussion, bath vanished by time, frequently producing such changes, that the same thing which appeareth in one form to day, may have worn a different- form some years before ; when documents, pertinent to this business may have been mislaid, lost, or destroyed, some of them not impossibly by the means of that executor and guardian, who had a right to the possession of them ; and when the same causes would prevent a recovery of satisfaction for the injury, which, according to the letter often mentioned before, Peter Beverley Whiting complained, he had suffered by the malversation of his fathers executors ; the court is of opinion this is one of those cases, in which the statute for limitation of actions, a law believed by most men esteemed well learned in jurisprudence to be congruous with the principles of natural law, and to be sanctified by public utility, may be honestly and conscientiously pleaded ; and therefore the court allowing the plea of the defendent Elizabeth Whiting, and, being of opinion, that a demand barred by the statute for limitation of actions, existeth not afterwards, so that tbe plaintiffs could not recover their demand against the other defendents, if they were indebted to Peter Beverley Whiting,
Dismissed the bill, with costs.

 This appeareth by exhibits annexed to the answer of Elizabeth Whiting.

 This is inaccurate. The sons were not intitled to the possession of their estates before (he debts were paid, in the mean time therefore the executors might have retained or recover the possession.